The first case on the docket today is Appeal No. 22-1324, Apple v. Corephotonics. Mr. Flynn, are you ready? Thank you, Your Honor. May it please the Court, James Flynn for Apple. I'd like to reserve three minutes for rebuttal. This is an IPR appeal concerning mounting image sensors on separate printed circuit boards. Apple's briefing identified two errors with the board's final written decision rejecting its case for obviousness. First, the board erred in rejecting and ignoring unrebutted expert evidence that a skilled artisan would have understood the prior art May referenced to teach mounting those sensors on separate circuit boards. And second, the board similarly erred in rejecting unrebutted evidence that a skilled artisan would not have been motivated to combine May's separate circuit board teaching with the prior art, such that the challenge claims are rendered obvious. Where in May is there any disclosure or teaching of mounting the sensors on different PCBs? Yes, Your Honor. There are three mutually reinforcing portions of the May reference that support that teaching, as interpreted by Dr. Sassion's expert declarations. The first of those is the disclosure at Appendix 1568, that's Column 10, Lines 14 to 16. Could you give me a second? Of course. Okay. And that's the portion in which May teaches that, in addition, in some embodiments, the sensors in the image capture assembly may be positioned next to each other on a common circuit board assembly. Is it your position, I take it, that because it says in some embodiments, that suggests that in some embodiments they're not on the same printed circuit board? Exactly, Your Honor. And our expert explained that a skilled artisan would have understood that from the May reference. That's at Appendix 2479 through 2480. But that's just a reference to some embodiments. That doesn't necessarily mean that there are different embodiments that have a different configuration. You might imply that. That's right. Or read into that, but that's a bit of a leap, is it not? I agree that it's an inference, Your Honor, and that's an appropriate inference for an expert to draw under this Court's decision in Acoustic Tech. Experts may explain what a skilled artisan would infer from the prior arc. That makes sense. But what about the substantial evidence standard review that we have here? Why is it that that evidence makes it so it's unreasonable for somebody not to trade that as affirmatively showing use of different printed circuit boards? Yes, Your Honor. So the first point I'd make is that the Board didn't consider this portion of May at all, even though the parties raised it, even though Dr. Sossian's expert declaration discussed it. And so that alone renders the need for remand here for the Board to consider that portion of the disclosure. And so there was no substantial evidence for them to reject Dr. Sossian's testimony or to ignore it entirely in this respect. The Board, I do want – I'm sorry to cut off, but the Board expressly says they considered all of Dr. Sossian's testimony. Are we supposed to not believe them? Your Honor, they didn't discuss this portion at all. They didn't explain why they were rejecting it. They just wrote off the entire declaration as necessary. But they do say, quote, we've considered all of his testimony. Doesn't that mean they considered all of his testimony, including this portion? I think that's right, but they didn't explain why they were rejecting it, and the Board needs to give some reasoned explanation. This is a classic State Farm problem where there's an important portion of the argument presented by the parties, an important component of the problem that the Board didn't explain how it was rejecting. That's not really a substantial evidence argument that you have there. You're arguing an APA violation. That's right. This Court has framed it in both ways. So I point to the Epicon case where the Court reversed actually for failure to address unrebutted expert testimony. So that was an application of a substantial evidence question, but I agree it could be framed as well as an APA challenge. Turning back to Judgment's original question, the other two portions of the May reference that disclose the separate circuit board teaching are the figures that are reproduced at page 18 of our opening brief or the appendix at 1551 through 1552. But that's not actually the reference itself. So we've annotated the drawings at the opening brief 19. We can also look at those drawings at 1551. But just to be clear, what you're pointing to is not the reference itself. It's the expert's annotation of the references to draw the printed circuit boards, right? That's right. So the annotation in our brief is our own annotation just to display where the sensors are and where a circuit board might be mounted. The reference itself doesn't have that shading. That's right. But the expert exclaimed, and this is at 2474 through 2477, again, that a skilled artisan would have inferred from these drawings because the image sensors aren't sitting in the same plane, that those image sensors would need to be mounted on separate printed circuit boards. There would be no way to mount all three of those sensors, for example, in figure 10E on the same circuit board, assuming that the image sensors need to be mounted in planar fashion to those circuit boards. Given the contrary expert evidence, the testimony on this, why wasn't the board free to credit that other testimony and thus conclude that, you know, those printed circuit boards wouldn't necessarily be in different planes or wouldn't be different printed circuit boards? Your Honor, there was no contrary expert testimony here. Quirk Photonics presented no evidence on the other side. So all the board had to go on was the attorney's argument that there could be non-planar mounting. That was pure theory. There was no evidence to support it. And so when the board adopted that attorney argument as its own reasoning, that finding was without substantial evidence because it was without evidence at all. But they don't have to credit. It's true, isn't it, that the board can choose, in light of the references, plain teachings or lack of teachings, can choose to credit or not credit expert testimony, right? There doesn't have to be contrary expert testimony. Do you agree with that? I agree with that. There are standards this Court has set for rejecting unrebutted expert testimony. So that's Granite Construction explains that the board can't reject expert testimony that's unrebutted without finding that it's implausible or completely unfounded in the record, for instance. And, again, this Court in Intel, for example, in Ethicon, has required some factual basis for the board to reject expert testimony in this way. Again, there was no countervailing evidence of non-planar mounting. And, therefore, the images or the figures as interpreted by Dr. Sosyan do disclose separate circuit boards because there would be no other way to align the sensors in parallel fashion to the circuit boards themselves. Is it really fair, though, to call this unrebutted expert testimony? The board had May in front of it, and the board was qualified to read May and make its own determination as to what it disclosed and did not disclose. Your Honor, the board is entitled to read May on its own, of course. But this Court has explained in Renovasive that the board cannot rely solely on common knowledge or common sense to support its findings. And here, for example, their substitution of the non-planar mounting theory would, I think, at best be described as the board applying its sense of common sense in interpreting May. But, again, there was no evidence to support that finding. But what about, is it really common sense to read May and reject your contention and your expert's contention that it discloses the separate printed circuit boards when they just don't see it there? Is that just relying on common sense? Or is that using their own expert background to read a prior art reference and see that it doesn't seem to disclose what you say is there? The board didn't articulate its reasoning in that way. It didn't, for example, suggest that it was relying on its own expertise. It just offered this non-planar mounting theory. And I returned to the point earlier that the board didn't discuss the most critical aspect of this issue in the case. And so, at the very least, a re-amend would be appropriate. I do seem to recall that the board said that the reference certainly doesn't teach that the only embodiment in which there's non-folded lens embodiment shows a single printed circuit board, right? That's right. So, even if we assume for a minute that the reference taught printed circuit boards in a folded lens embodiment, the primary reference was a non-folded embodiment, right? That's right. The reference contains both configurations. The one from which Dr. Sasiano is drawing is the folded configuration. That's right. So, how do you infer that this reference teaches for a non-folded lens configuration having separate printed circuit boards? Right, Your Honor. So, that's this court's explanation in re-applied materials and Belding v. Burke Tech that a reference must be considered for everything it teaches, not limited to the particular invention at hand. And then KSR, Intel v. Qualcomm, and Intel. But the invention, the reference itself discloses a folded embodiment and a non-folded embodiment. And it's undisputed that in the unfolded embodiment, it shows a single printed circuit board, right? That's right. So, then I would point us to KSR and the Intel case in which the court explained that if a technique has been used to improve one device, a person of ordinary skill would recognize that it can improve similar devices in the same way. I guess this goes to motivation. This is on it. So, as you said, if we're assuming that there's the teaching, it would go to motivation to combine. Agreed. I'll offer an analogy here. So, assume a reference teaches making traditional sandwiches with Swiss cheese. And then suppose that the same reference teaches making open-faced sandwiches. That reference would teach putting Swiss cheese on the open-faced sandwich. There's no reason to think that the Swiss cheese is limited to traditional sandwiches. The improvement to the one sandwich can be applied to the other. And this court has repeatedly said that. Again, that's the KSR case, the Intel case, that improvements to one device can be applied to others. And then I point again to Belden where the court explained that if the solution is independent, if there are independent design choices, those design choices can be applied across different configurations, different embodiments. So, again, here, even though May teaches. I mean, it seems that the very reason you say for why the folded lens embodiment must have separate printed circuit boards is because it's folded and it couldn't operate. It wouldn't be in the same plane with printed circuit boards. But that doesn't, that rationale for why that teaching is present in the reference doesn't apply to the non-folded embodiment. That's right. But it also doesn't foreclose taking that improvement to the folded configuration and applying it in the non-folded setting. I'd also point the court to Appendix 2478 through 79. This is the third answer to Judgelin's question about the various components, where Dr. Sasian explains that the May figures 10, the folded configurations, teach a modularity that was advantageous and that, again, that modularity can be applied to non-folded configurations to achieve the same result. I see I'm out of time. You want to say more? Yes. Thank you very much. Let's hear from Mr. Fenster. Good morning, Your Honors. May it please the court, Mark Fenster for Appellee in Core Photonics. We've never merited our own panel before, so it's a pleasure to be here. There are two independent reasons why the court should affirm. There is substantial evidence for both the board's decisions that May does not teach separate PCBs or mounting camera units on separate PCBs, and separately and independently, there's substantial evidence to support the board's finding that there is not a motivation to combine the non-folded Perulski, Huang, and Tang references with the folded embodiment of May. If the court finds substantial evidence on either one, the court should affirm. Both are independent reasons for affirming. How do you respond to Mr. Flynn's argument that in some embodiments language sort of infers that there might be other embodiments that meet the language of the claim? That language actually says in some embodiments the sensors may be placed next to each other and on a common, so it's not necessarily so that it could be that they're not next to each other as opposed to not on common boards. But in any event, there is no express teaching, as the board found, and as a parent from reading May, of putting camera units on separate PCB boards. So while there may be an inference, there's no teaching, and that inference, Your Honor, that language allows for different inferences, and it is not inherent in that disclosure, even inferentially, because it could mean that there are other ways to place sensors, not necessarily on different PCB boards. As I understand Mr. Flynn's argument, he refers to that language as you can draw the inference he would like, and that that inference is supported by Dr. Sasaitian's testimony, which is unrebutted. What do you say to that? Yes, so, Your Honor, the board absolutely has the power, the ability to review that testimony and compare it to the evidence cited and determine whether or not it finds it credible. Apple bared for the burden of proof in this case, and just because it's unrebutted doesn't mean that it has to be accepted. Of course the judges make a determination of credibility, and here they specifically go through all, as Judge Stark noted, all of the testimony and all of the evidence that was cited therein, both in the petition and in Dr. Sasaitian's testimony, and find that it's just not credible, and they did that for both findings, that May doesn't teach independent PCB boards, and separately for the motivation. Where does the board address the portion of May that Judge Lynn is asking about, the some embodiments and implying other embodiments? So, Your Honor, there is not a direct site. The board's discussion of Dr. Sasaitian's testimony and the evidence cited therein is at pages appendix 51, 52, and going on through 55. I agree, Your Honor, that in the parentheses where they cite the evidence in May, they cite all of the exhibits, the figures D through F, the portion at column 7, lines 4 through 15, they cite to the May reference at exhibit 11. They don't specifically cite that column 10, line 14, but they do specifically say we have reviewed all of Dr. Sasaitian's testimony,  But is that enough? Don't they owe us some explanation as to why they didn't credit the implication that the only expert before them told them was a reasonable inference from May? Sure, and Your Honor, it's just not fair to say. My friends have said several times in briefing and again here today that the board ignored Dr. Sasaitian's testimony. That's just not true. There's actually a very thorough and reasoned analysis at pages 51, 52, 53 through 55 as to the first portion analyzing all of Dr. Sasaitian's testimony and the portions of it. I'm sorry to interrupt you, but I think the question is, do they owe us an explanation for why the sentence in May, the specific sentence about in some environments, is not persuasive? I don't think that that's a specific, that's not a violation of the APA for them not to have specifically addressed that one sentence because there is a fulsome discussion of Dr. Sasaitian's testimony. They explain that they reviewed all of his testimony. They cite all of the paragraphs, including the paragraphs that cite to that sentence at column 10 of May. They state that they didn't find it supported by the evidence and they say that they reviewed all of the evidence cited in the petition and Dr. Sasaitian's. So the fact that they didn't mention in a very fulsome and thorough disclosure that they didn't specifically mention that one sentence does not constitute an APA violation. Earlier you said, in quoting that sentence, you said that that in some embodiments language wasn't that persuasive because it says in some embodiments the sensors in the image capture assembly may be positioned next to each other and on a common circuit board assembly. But I just want to note the end is not in there. That sentence doesn't have the word end in it. It says the sensors in the image capture assembly may be positioned next to each other on a common circuit board assembly. It's all one sentence. You are correct, Your Honor. But as I read that, and I apologize if I misspoke, it says in some embodiments the sensors in the image capture assembly may be positioned next to each other on a common circuit board assembly or may be packaged in a common integrated circuit package and the lenses may be provided in a common lens assembly that mounts onto the circuit board. So one, I do think that my suggestion that there's another inference possible from that sentence is also fair. The other thing that I want to note is that the May reference specifically discloses that the sensors are mounted as part of lens assemblies, and this sentence specifically says that the lens assembly might be mounted on the board. And so my friend's suggestion that the board adopted a fanciful, unsupported possibility of sensors being mounted nonplanarly is actually supported directly in May, and it's based on the assumption, as my friend said, that sensors have to be mounted in a planar fashion. There is nothing in the record, including in Dr. Sasian's declaration, that says they have to be mounted in a planar fashion and they can't be mounted as part of a lens assembly. So what happens in the folded configuration is the lens is facing up, the lens is folded across the bottom of the phone or of the camera, the sensor is over here, the PCB board is down here. The lens assembly and the sensor are mounted together on the board, and so on the PCB. And that's what the board is talking about when it says there's nothing that says it can't be on a that all three of the folded in different configurations in different directions could be mounted on the same PCB board, even though the sensors wouldn't be mounted in a planar fashion to the PCB board. Is that the evidence the board had for a nonplanar embodiment was just the fact that Dr. Sasian didn't say you couldn't have? No. I think, Your Honor, that May specifically says that the sensors are mounted as part of the lens assemblies, and this portion of column 10 says that the lens assemblies can be mounted on the PCB board. And the absence of any evidence from Dr. Sasian or otherwise in the record that sensors must be mounted in a planar fashion. So all of that combines to give substantial evidence for the board's finding that May does not teach. And as to the motivation to combine, which is a completely independent basis, there is a thorough, reasoned analysis at pages 55 to 60 of the board's decision in the appendix, 55 to 60, where they go through and they specifically address all of Dr. Sasian's opinions, and evidence regarding the motivation to combine, and specifically find that it's too generic, not specific enough, and doesn't support even the preponderance of the evidence that one would be motivated to combine the folded configuration with the nonfolded prior art. Is that the proposed combination, that it has to be the folded configuration of May with the nonfolded configurations? So there was actually a lot of confusion about this below, and the court starts its final written decision acknowledging, citing a portion of the transcript. So the answer is that the proposed combination is taking this idea that they say is present, which the board found was not present, and from the folded configuration. First of all, it is a combination, and it's present. Okay. That's right. So assuming that that were present, that the folded configuration showed that you could mount on different PCB boards, somehow combining that and applying it to the nonfolded configuration, even though every one of the prior art references, Borulski, Hwang, Tang, and the nonfolded configuration, may all show the sensor on a single PCB board. Did you understand the combination to be to modify the primary references in view of May to make them folded, or to modify the primary references in view of May to take May's teaching generally of having separate printed circuit boards, either on folded or nonfolded assemblies, and put them on the nonfolded assemblies of Borulski, for example? The latter, Your Honor. Okay. In terms of the lack of expert evidence on your side, is granite construction the test that we are to apply to determine if the board could properly reject the arguably unrebutted testimony from the other side's expert? And if that is the right test, how can you meet it? So I think the proper test, Your Honor, is so they still have the burden of proof, and the board has to evaluate the evidence in light of that burden of proof. And so they don't have to just accept it, even if it's non-rebuttive. And it's not true that there wasn't argument on the other side. There was, but we pointed out problems in Dr. Sasin's declaration compared to May. It just wasn't there, and that's what the board found. Does the board have to find Dr. Sasin either not credible or implausible or something analogous to that? I don't think that there are specific words. I think that they went through and they have to analyze his opinion, compare it to the evidence that he cites, and see do they believe that it's credible, does it support his opinions. In this case, his opinion really was conclusory. This is at Appendix 1269 to 1270, where he basically, after reviewing the evidence just as a person of skill in the art, would understand that they're on separate boards, even though May doesn't say that, and he doesn't cite anything from May at that point. The ultimate, penultimate conclusion for Dr. Sasin really is conclusory. And in this case, where there is a conclusory opinion, does the board say his testimony is conclusory and that's why we're not persuaded by it? Does the board say his testimony is conclusory and that's why they're not crediting it? I do believe that they said that it is conclusory and they did go through and specifically found that the May reference and the portion cited, the evidence cited by Dr. Sasin, don't support it. Do you have a cite for that? So this is on 52. And I'm not sure if they actually say conclusory. We find that the petitioner has not shown sufficient evidence. This is at page 52, line 2. The portions of May cited in the petition do not teach or suggest more than one printed circuit board, let alone placing each different type of lens unit on separate printed boards. We have considered all of Dr. Sasin's testimony. They cite all of the relevant portions, including the portion where he cites column 10, and supporting evidence, and it's not supportive, persuasive that May teaches or suggests placing different lenses on separate units. And then they go through and analyze the rest. I think that's where my concern is. If you have Dr. Sasin saying one thing, and then on your side you have nobody contradicting it, and if the board doesn't make it clear that they found Sasin not credible, conclusory, or implausible, they just said, we just are not persuaded by him. Can they really do that? Maybe that knocks him down to very little bit of evidence, or a little bit of probative weight, but there's nothing on the other side, so how could they not have met their burden? So there doesn't have to be anything on the other side. They bear the burden. But the burden is a preponderance. You have to, I think, agree, a tiny grain of salt against zero meets your burden by a preponderance, does it not? I agree that it is a preponderance, but here the board went through Dr. Sasin's analysis. May just doesn't teach separate PCB boards, and the fact that they have an expert say one of skill in the art would understand it, the board was within their rights to go through May and analyze it and say, we don't see it. None of his rationale explains it. They also agree that Dr. Sasin doesn't show that sensors can only be mounted in a planar fashion, which is the assumption that underlies his entire opinion and their entire argument. If sensors don't have to be mounted in a planar fashion, then that is the assumption, and he doesn't say that that's the only way to mount it, and May provides evidence that they can be mounted as part of the assemblies with the assemblies mounted on the PCBs. I see that you're out of time. And I would just remind the court about the second independent opinion basis for affirmation. Thank you, Your Honor. Thank you. You have nearly all of your rebuttal time. Thank you, Your Honor. I heard core photonics articulate an alternative interpretation of May's column 10 language. That's the first time we've heard that from core photonics. There was no articulation of an alternative understanding for the board or in their answering brief here. They suggest that we are saying the court has to accept unrebutted expert testimony. That's a straw man. We've never made that contention. As Judge Stark pointed out, we rely on granite construction to set a standard the board has to meet. I didn't hear another articulation of that standard or a citation to a case suggesting that granite construction is not good law here. Core photonics asserts that the board found Dr. Saucyon not credible. There's no credibility finding there. And as we just saw, there's also not a finding that his testimony on separate circuit boards was conclusory. The board doesn't say that either. As to planar mounting, we did establish, and these are the figures in our opening brief at 16 to 17, that the state of the art was that image sensors were mounted in planar fashion to the circuit boards. There's no example of any other kind of mounting. The section that Mae just cited doesn't suggest that there's perpendicular mounting, for instance. It's just that the image capture assemblies are mounted on the printed circuit boards. It doesn't say anything about planar or non-planar. Did Dr. Saucyon say it must be planar? He did not. The planar theory was raised in core photonics to reply. So that was after Dr. Saucyon's last declaration. So that isn't directly addressed in the declaration. Those are the points I have, Your Honors, unless you have further questions. On the remedy, very briefly, we'd ask you to reverse here. Core photonics hasn't disputed that that's the correct remedy. And because there's no evidence going in the other direction, we think the only reasonable answer here is that the claims are obvious. Nevertheless, if the court doesn't see it that clearly, we think a remand is warranted for the reasons I've explained earlier, that the board failed to address a major component of the problem. And on the second point, motivation to combine, that the board rejected its conclusory testimony that was extremely detailed by Dr. Saucyon that provided a number of reasons. Modularity was advantageous. And so, again, the board should have considered that rather than rejecting it as conclusory and a remand as appropriate. Thank you, Your Honors. Thank you. The case has been submitted.